MUTUAL LIFE INS. CO. v. KEEN.

(Circuit Court of Appeals, Third Circuit. February 2, 1905.)

No. 37.

1. LIFE INSURANCE—ACTION ON POLICY—AFFIDAVIT OF DEFENSE.

The statement of claim in an action to recover life insurance set out a provisional policy issued by defendant to the decedent, insuring him for the term of 90 days, and which recited that he had made application for a permanent policy, and the receipt from him of the amount of one year's premium thereon; that the company should have the right to terminate the provisional policy at any time on notice and repayment of the premium received, but that if the application was accepted a permanent policy should be issued as soon as might be, and the amount received should be allowed in payment of the first premium thereon. The statement then alleged that the provisional policy had not been terminated by notice, nor had any part of the premium paid been returned, but that after the expiration of the 90 days the insured demanded a permanent policy or the return of the premium, and was told by defendant that his application had been accepted, and a permanent policy would be delivered in due course of mail, but that such policy had not been delivered at the time of the death of insured, which occurred shortly afterward. *Held*, that plaintiff's cause of action did not rest upon the provisional policy, which had expired by its terms, but solely upon a contract for permanent insurance, created either by the issuance of a policy or the acceptance of the application before the death of the applicant, which gave him a right to demand the policy, and that an affidavit of defense explicitly denying that such policy had been issued, or that the application had been accepted, or that defendant had ever so stated, went to the whole of plaintiff's claim, and was sufficient.

2. PLEADING—CONSTRUCTION OF AFFIDAVIT OF DEFENSE.

The office of an affidavit of defense, under the law of Pennsylvania, is to prevent a summary judgment, and it is not to be subjected to close technical examination. The law may not be so construed as in effect to deprive a defendant of the right to present disputed questions of fact or law to a court and jury for determination by the orderly and established judicial procedure.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 131 Fed. 559.

Charles P. Sherman and John G. Johnson, for plaintiff in error.
Francis S. Laws, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, J. Suit was brought in the court below by the defendant in error, hereinafter called the plaintiff, against the plaintiff in error, hereinafter called the defendant, to recover upon an alleged contract of life insurance, in her favor, between her husband, John Este Keen, and the defendant company.

To the statement of claim filed by the plaintiff, affidavits of defense, original, amended and supplemental, were filed by the defendant, and thereafter, upon motion of the plaintiff, a rule for judgment for want of a sufficient affidavit of defense, was, after hearing and argument, made absolute, and judgment entered for the plaintiff for $4,850, etc. The following facts, as alleged in the statement of claim and in the affidavits of defense, are disclosed by the record:

Prior to November 4, 1902, John Este Keen, a citizen of the United States, while residing in Constantinople, Turkey, made his application to the Mutual Life Insurance Company of New York, the defendant, for a policy of insurance upon his life, in the sum of £1,000 sterling, upon the 20-year endowment plan, in favor of his wife, the said plaintiff. On or about November 4, 1902, the said defendant, through its agent and general manager for the Levant, in Paris, issued to the said John Este Keen its provisional policy, insuring his life, for the benefit of his wife, the said plaintiff, for a period of 90 days, in the amount and upon the plan applied for, receiving therefor an amount equal to the annual premium for such insurance. The said provisional policy, made part of the statement of claim, is as follows:

"The Mutual Life Insurance Company of New York.

"Age 49 years.                                                          Amount £1,000.
          "20 Year Endowment; 20 Year Distribution.
"James W. Seymour, Jr., General Manager for the Levant, 17 Avenue De
                            L'Opera, Paris.

"In consideration of the application for this provisional policy which is hereby made a part of the contract and of sixty-one pounds two shillings and four pence, the Mutual Life Insurance Company of New York does insure the life of John Este Keen for the sum of one thousand pounds sterling, in favor of his wife Hannah Mills Keen for the term of ninety days from date, to wit, until the 2d day of February, 1903, subject to the usual terms of said company's policies. It is expressly stipulated that if the officers of said company at New York shall not agree to continue the insurance during the said ninety days they may terminate said insurance at any time prior to the expiration of said ninety days by mailing a registered letter to the said J. E. Keen, informing him of their decision, and said insurance shall thereupon become null and void. In such a case this provisional policy shall become null and void, and shall be returned to the company at Paris, against reimbursement of the sum paid. If, on the other hand, the application for insurance is accepted by the officers of said company, at New York, a permanent policy shall be made out and delivered to the insured as soon as may be, and the amount herein acknowledged to have been received by the company in exchange for this provisional policy shall be allowed in payment of first premium on said insurance.

"In witness whereof, the said the Mutual Life Insurance Company of New York has caused this provisional policy to be signed in duplicate, by its President and Secretary, at its Home Office in the City of New York, and to be countersigned at Paris by James W. Seymour, Jr., its General Manager for the Levant, on this 4th day of November in the year 1902, and signed by the insured.                                             Richard A. McCurdy, President.

"[Seal]    W. J. Easton, Secretary.
"Countersigned by James W. Seymour, Jr., General Manager for the Levant.
"John Este Keen, the Insured."

This provisional policy expired by its own limitation February 2, 1903, the officers of the defendant company not having exercised

their right to terminate said insurance at any time prior to the expiration of the said 90 days. The statement of claim contains the following averment:

"And the plaintiff avers upon information and belief that at no time during the said ninety days or afterwards did the defendant ever terminate the said policy, or mail a registered or other letter to the said insured, informing him of their decision so to do. That in the latter part of February, 1903, after the said ninety days had expired, the said insured, by his agent, made a demand upon the defendant at Constantinople, Turkey, for a permanent policy of insurance to be issued in pursuance of said provisional policy, or a return of the premium of $295.82 which had been paid therefor. The defendant refused to return said premium, and advised the said insured' that his application for a permanent policy had been accepted by the home office of the defendant in New York, U. S. A., and that a permanent policy would be delivered in due course of mail. The defendant has never returned or offered the return of the said premium, but still retains the same."

John Este Keen died March 26, 1903. The plaintiff avers that immediately thereafter, the defendant company was notified of the said death, and claim made for the amount alleged to be due "under said policy," and "that by reason of the premises, the said John Este Keen was, on the 26th day of March, 1903, insured in the defendant company in the sum of £1,000 sterling, * * * payable to the plaintiff as the wife of said insured and as the beneficiary named in the policy of insurance, and which said sum the defendant has refused and still refuses to pay."

The material parts of the said affidavit of defense, amended and supplemental, filed by the defendant, are as follows:

"That * * * defendant has a just, true, full and legal defense to the whole of the plaintiff's claim of the following nature and character, to wit:

"That no contract of insurance existed between the defendant and John Este Keen at the time of his death, to wit, March 26, 1903, and that defendant owes plaintiff nothing."

It then sets forth the provisional policy, above recited, as issued from the office of its general manager for the Levant, in Paris, November 4, 1902, and avers:

"That said provisional policy lapsed by its own terms February 2, 1903, on which date all defendant's liability under said policy ceased.

"That defendant did not exercise its right to terminate said insurance prior to the expiration of said ninety days, nor, on the other hand, was the application for insurance accepted by the officers of said company at New York, and no permanent policy was ever delivered to said John Este Keen, and no contract of insurance, other than the said ninety day provisional policy No. 100,110, which lapsed by its own terms February 2, 1903, as aforesaid, was ever entered into by defendant with said John Este Keen.

* * * * * * * * *

"That the plaintiff, in her statement of claim heretofore filed in this case, avers as follows: 'The defendant refused to return said premium, and advised the said insured that his application for a permanent policy had been accepted by the home office of the defendant in New York, U. S. A., and that a permanent policy would be delivered in due course of mail.'

"That it is not true either that the defendant refused to return said premium, or that the defendant advised the said insured that his application for a permanent policy had been accepted by the home office of the defendant in New York, U. S. A., or that a permanent policy would be delivered in due course of mail.

"That on the contrary, the defendant, acting through its officers at New York, deemed the information given to it by John Este Keen concerning

certain matters in his application for a permanent policy of insurance to be unsatisfactory, and refused to make any permanent insurance or to cause any permanent insurance policy to be delivered, until it, by its officers in New York, should be satisfied concerning the matters involved, which it deemed material and which were actually material to the transaction. It directed the director general for the Levant, at Paris, France, to deliver no permanent policy to said Keen until it, the defendant, by its officers at New York, should be satisfied concerning said material matters.

"That neither the defendant, nor its officers in New York, did accept the application of said John Este Keen for a permanent policy, and never agreed or authorized any one to express its agreement to the issuance of such permanent policy.

"That before the death of the said John Este Keen, it, the defendant, by its officers in New York, became satisfied that it had been deceived in said material matters, and forthwith, without delay, by cable and by mail, notified its said director general for the Levant, in Paris, not to deliver any permanent policy to said John Este Keen, and to return to said Keen the premium which he had paid upon the provisional policy which had been issued, and which had expired by its own limitation.

"That after the said John Este Keen had made his said application for insurance, a letter was addressed to him at Constantinople, Turkey, where he then resided, by the defendant's said director general for the Levant, at Paris, in which he, said Keen, was informed that before issuing any policy the company, defendant, would require from him a satisfactory statement to the effect that he had never applied to any other insurance company or association for a life policy which had been refused.

"That said Keen wrote a letter from Constantinople, addressed to said company's director general for the Levant, at Paris, dated February 12, 1903, in which he said: 'I beg to say that I have never made application for insurance to any other company, and have thus not been refused.'

"That said representation was false, though the fact that it was false was not known to said director general for the Levant.

"That the said application by said Keen for insurance, which was dated November 4, 1902, and which was acknowledged by him to be the basis of his provisional contract for insurance, contained false answers to certain questions put to him, which answers were warranted to be true. These answers concerned matters material to the contract, which were subsequently discovered by the defendant to have been false. They were believed by it at the time they were made to be true.

"Amongst these false answers in said application was an answer which untruthfully stated that he had never been declined as an applicant for insurance by any other company. As the defendant is informed, believes and expects to be able to prove, said Keen had applied antecedently to this representation to another insurance company for insurance, and had been by it declined.

"In said application, in answer to a question as to the name and address of the physician last consulted by the applicant, he replied: 'Dr. Patterson;' also that said physician had been consulted by the applicant one year antecedently to the application, and that the nature of the complaint concerning which said physician had been consulted was indigestion.

"In said application, in answer to a question requiring disclosure of full particulars of any other illness or injury he had had, giving the date, duration and remaining effects, if any, said applicant falsely answered: 'Never seriously ill;' whereas, as defendant is informed, believes and expects to be able to prove, the said Keen, in May, 1902, was operated upon for tubercular orchitis by a physician other than the said Dr. Patterson.

"All of which above-recited facts the company defendant believes to be true and expects to prove upon the trial of this cause."

In the opinion of the court below these affidavits did not, in any or all of the particulars as above recited, set forth a sufficient defense to the plaintiff's claim. To the judgment thereupon entered, for

want of a sufficient affidavit of defense, this writ of error has been taken.

We think the learned judge of the court below was in error in the view taken by him of these affidavits, and in the entry of said judgment. The fundamental error in this case is due to the construction given by the court below to the scope and effect of the provisional contract of insurance. The court in its opinion says:

"The provisional policy was issued for three months, which was to be merged into a permanent policy at the end thereof, unless the company found reasons during that time for terminating the insurance, when the provisional policy was to become null and void at the same time, upon the receipt of notice. No notice was given, and we think, therefore, at the end of the expiration of the provisional policy the insured had a right to assume from the language of his provisional policy, that his permanent policy took effect, unless otherwise notified. * * * We think, therefore, for these reasons, that the decedent was insured at the time of his death, whether defendant had actually executed and delivered the policy or not. He was entitled to the policy under the contract; no money had been returned, nor had the insurance been terminated, in accordance with the provisions in the agreement, and its failure to carry out its part of the contract, by not executing the permanent policy of insurance, does not relieve it from liability."

This is, we think, a misconception of the meaning, force and effect of the provisional policy, and the stipulations contained therein. The defendant is a New York corporation, doing business in various foreign cities, through general agents and managers, among others ir Constantinople, through its general manager in Paris. It is quite obvious that residents of such far away places, who are applicants for insurance, would, in ordinary course of business, have to submit to noninsurance through a considerable period while their applications were being transmitted to the home company for investigation and consideration. It therefore requires no explanation to understand how the device of a provisional policy, to remain in force during such period as will reasonably cover the delays involved in the transactions aforesaid, allows the company to conduct its foreign business in competition with foreign companies. The applicant has the benefit of immediate insurance, while his application is being considered, and the company assumes an unconsidered risk for a short period of time. By this arrangement, the home company may give to the proposed risk the mature investigation and consideration required, and accept or reject the same, according as its judgment may be affected by such investigation and consideration, in the latter case returning the premium received, or such part thereof as may not be applicable to the provisional policy.

This general purpose we read in the provisional policy, as recited in the statement of claim and affidavits of defense. It contains, first, a provision for immediate insurance "for the term of 90 days from date, to wit, until the second day of February, 1903"; second, a provision that the company may terminate such immediate insurance before the end of 90 days, at its own option, in which case the "provisional policy shall become null and void and shall be returned to the company at Paris against reimbursement of the sum paid"; third, a provision for the issuance of a permanent

policy, if the application for insurance is accepted by the officers of said company at New York. It is quite clear, then, that this provisional policy might have been terminated, either by the expiration of the 90 days, on February 2, 1903, or prior thereto if the company should choose not to continue the insurance, and should notify, by registered letter, the applicant to that effect. In the case at bar, the provisional policy was terminated by expiration of its term. It then remained for the insurance company to accept or not the application for insurance. In the former case, it would be due to the insured that a permanent policy be made out and delivered as soon as might be.

The case of the plaintiff then stands, as stated by herself, thus: The provisional policy had expired by its own limitation on February 2, 1903, the insured, her husband, not having died while it was in force. Her claim against the company must then rest upon, either the fact that a permanent policy had been issued prior to his death, or that his application had been accepted by the company, whether during the continuance of the provisional policy or after its termination, such acceptance imposing upon the company the obligation to make out and deliver the policy, and giving to the insured the right to demand and receive the same. That such construction was placed upon the stipulation of the provisional policy by the plaintiff, is plain from the following averment of her statement of claim. We again quote it:

"That in the latter part of February, 1903, after the said ninety days had expired, the said insured, by his agent, made a demand upon the defendant at Constantinople, Turkey, for a permanent policy of insurance to be issued in pursuance of said provisional policy, or a return of the premium of $295.82 which had been paid therefor. The defendant refused to return said premium, and advised the said insured that his application for a permanent policy had been accepted by the home office of the defendant in New York, U. S. A., and that a permanent policy would be delivered in due course of mail. The defendant has never returned or offered the return of the said premium, but still retains the same."

Upon this averment of fact, the plaintiff rests the conclusion, that "by reason of the premises, the said John Este Keen was, on the 26th day of March, 1903, insured in the defendant company," etc. This is the essential averment of the plaintiff's case,—the substantive cause of action. If this is sufficiently denied by the defendant in its affidavit of defense, the plaintiff is not entitled to judgment, but must go to trial in due course before a court and jury. Let us see, then, how defendant in its affidavit, amended and supplemental, deals with this crucial statement of plaintiff's claim. The amended affidavit of defense says:

"That no contract of insurance existed between the defendant and John Este Keen at the time of his death, to wit, March 26, 1903, and that defendant owes plaintiff nothing. * * * That said provisional policy lapsed by its own terms February 2, 1903, on which date all defendant's liability under said policy ceased. That defendant did not exercise its right to terminate said insurance prior to the expiration of said ninety days, nor, on the other hand, was the application for insurance accepted by the officers of said company at New York, and no permanent policy was ever delivered to said John Este Keen, and no contract of insurance, other than the said ninety day

provisional policy No. 100,110, which lapsed by its own terms February 2, 1903, as aforesaid, was ever entered into by defendant with said John Este Keen."

In the supplemental affidavit of defense the defendant, as already quoted, says:

"That the plaintiff, in her statement of claim heretofore filed in this case, avers as follows: 'The defendant refused to return said premium, and advised the said insured that his application for a permanent policy had been accepted by the home office of the defendant in New York, U. S. A., and that a permanent policy would be delivered in due course of mail.'

"That it is not true either that the defendant refused to return said premium, or that the defendant advised the said insured that his application for a permanent policy had been accepted by the home office of the defendant in New York, U. S. A., or that a permanent policy would be delivered in due course of mail.

"That on the contrary, the defendant, acting through its officers at New York, deemed the information given to it by John Este Keen concerning certain matters in his application for a permanent policy of insurance to be unsatisfactory, and refused to make any permanent insurance or to cause any permanent insurance policy to be delivered, until it, by its officers in New York, should be satisfied concerning the matters involved, which it deemed material and which were actually material to the transaction. It directed the director general for the Levant, at Paris, France, to deliver no permanent policy to said Keen until it, the defendant, by its officers at New York, should be satisfied concerning said material matters.

"That neither the defendant, nor its officers in New York, did accept the application of said John Este Keen for a permanent policy, and never agreed or authorized any one to express its agreement to the issuance of such permanent policy."

An affidavit of defense could not contain a fuller or more explicit denial of plaintiff's statement of claim and cause of action, than does the affidavit of the defendant in this case. The categorical statement is made by plaintiff, that the application of her husband was accepted by the company, and therefore, pursuant to the stipulation of the provisional policy, it was bound to issue as speedily as possible a permanent policy, the conclusion of law following, that by reason of the premises, a contract of insurance existed between the defendant company and the said John Este Keen at the time of his death. To this categorical statement there is a categorical denial, which requires neither amplification nor explanation. It goes to the whole cause of action, and puts the plaintiff upon proof of her case in the orderly process of a jury trial.

The affidavit of defense law of Pennsylvania may not be so construed as, in effect, to deprive a defendant of the right to present disputed questions of fact or law to a court and jury for determination by the orderly and established judicial procedure. Such a result might well amount to a deprivation of property without due process of law.

Mr. Justice Mitchell, in speaking for the Supreme Court of Pennsylvania in the recent case of Andrews v. Blue Ridge Packing Co., 206 Pa. 370, 55 Atl. 1059, thus clearly defines the office of an affidavit of defense and the essential character of its required statements:

"An affidavit of defense should set forth fully and fairly, facts sufficient to show prima facie, a good defense, and if it fails to do so, either from omis-

sion of essential facts, or manifest evasiveness in the mode of statement, it will be insufficient to prevent judgment. But if not deficient in either of these respects, and on its face fairly setting forth a prima facie defense, it is not to be subjected to close technical examination as if it was a special plea demurred to. Its office is to prevent a summary judgment and for that purpose a showing of a defense, with certainty to a common intent, is sufficient."

It is manifest that a defense resting on a denial of the existence of the fact or facts upon which the plaintiff predicates his claim, does not require or permit the amplification necessary where affirmative defenses are set up, and in neither case is it necessary or proper to state the evidence in support of the defense so asserted. If the denial is full and complete, and goes to the whole of the plaintiff's claim, it is sufficient. A summary judgment, notwithstanding such a sworn defense, is not countenanced in reason or in law.

Without passing upon the question whether the learned judge of the court below should have attempted, upon a motion for summary judgment, to construe the stipulations of the provisional policy, or have left the same to be considered and passed upon at the trial, it seems to us clear that the construction actually placed upon said policy was not the correct one, and that he erred in saying that "a fair construction of the contract entitled the insured to assume that his insurance was accepted." Nor is the conclusion justified, that the provisional policy for three months was to be "merged in a permanent policy at the end of that period, unless the company found reasons during that time for terminating the insurance;" nor that because no notice was given during the three months to terminate the provisional policy at the expiration thereof, the insured had a right to assume from its language "that his permanent policy took effect, unless otherwise notified." As we have already stated, the plaintiff's statement of her claim is based upon a different theory, as to the meaning of the stipulation of the provisional policy to that thus advanced by the court below, and is consistent with our own interpretation thereof. As this is the vital point of the whole case, it is unnecessary to consider the other defenses to the plaintiff's action, arising out of the averment in the affidavits of defense, that false answers were made by the applicant in his application, upon the truth of which the permanent policy, as well as the provisional, was to be issued.

The judgment of the court below is set aside, and the case remanded to that court for further proceedings consistent with this opinion.